UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KENSHOND K. LOVE, JR.,

                Plaintiff,

v.                                                Case No. 22-cv-780-pp

JON NOBLE, MICHAEL GEIRACH,
THOMAS POLLARD, TIMOTHY GESSNER,
HAROLD BECK, NATHAN BOWERS,
DAKOTA MONKA, and JANE AND JOHN DOES 1-50,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

        Kenshond K. Love, Jr., who is incarcerated at Kettle Moraine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants exposed him to a substantial risk of serious harm and failed to protect him from that risk. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

        The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcearted when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 28, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $37.75. Dkt. No. 6. The court received that fee on August 9, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

  B. <u>The Plaintiff's Allegations</u>

The complaint names as defendants Warden Jon Noble, Deputy Warden Michael Geirach, Security Director Thomas Pollard, Complex Supervisor Timothy Gessner, Lieutenant Harold Beck, Sergeant Nathan Bowers, correctional officer Dakota Monka and Jane and John Does 1 through 50. Dkt. No. 1 at 2–3. The complaint alleges that all the defendants work at Kettle Moraine. Id.

3
Case 2:22-cv-00780-PP   Filed 11/02/22   Page 3 of 14   Document 7

The plaintiff alleges that on October 30, 2021 at around 4:55 p.m., he asked Officer Monka "to open the chemical box and janitor door" so the plaintiff could complete his daily job duties. Id. at 4. Monka responded by saying, "ok C.O. Love." Id. The plaintiff responded that he was "not a c.o. or a snitch." Id. Given the context, it appears that the plaintiff understands "c.o." to mean "cooperating offender." Monka responded, "you is today." Id. The plaintiff alleges that other incarcerated persons were around when Monka said this. Id.

At around 6:08 p.m. the same day, Sergeant Bowers entered the plaintiff's unit. Id. The plaintiff spoke with Bowers at the officer station and told him Monka called him a c.o. and a snitch. Id. The plaintiff alleges Monka was there and "started laughing, causing plaintiff Love to walk away." Id. A few minutes later, Bowers called the plaintiff into a social worker's office to speak with him about Monka's comments. Id. at 5. The plaintiff "fully informed" Bowers about the incident, and Bowers "said he would have a talk with the officer." Id. Later that day, the plaintiff wrote to Complex Supervisor Gessner about Monka's comments and told him "other Inmates starting [*sic*] laughing" at the comments. Id.; Dkt. No. 1-1 at 4. Gessner's undated response said he would "address with C.O. Monka." Dkt. No. 1-1 at 4.

On November 1, 2021, while Lieutenant Beck was making his rounds on the plaintiff's unit, the plaintiff told Beck about Monka's comments and that he had spoken to Bowers about it. Dkt. No. 1 at 5. He also told Beck that Monka had laughed when the plaintiff reported the situation to Bowers. Id. at 5–6. Beck told the plaintiff that he would "take care of the situation." Id. at 6.

The next day, November 2, 2021, the plaintiff to wrote to Beck about Monka's comments. Id. Beck responded that "the s[e]argent addressed this with the officer." Id.; Dkt. No. 1-1 at 5. The same day, the plaintiff wrote to the psychological services unit for assistance "proccesing [*sic*] thoughts and emotions." Dkt. No. 1 at 6. Psychological services staff responded the next day and scheduled a visit for the following week, "time permitting." Dkt. No. 1-1 at 6. Psychological services staff called the plaintiff for the appointment a week later, though the plaintiff does not recall the specific date. Dkt. No. 1 at 6. They told the plaintiff "to stay in his room to things blow over." Dkt. No. 1 at 6.

On November 4, 2021, the plaintiff wrote to Security Director Pollard about Monka's comments and told him "other inmates started laughing" at the comments. Dkt. No. 1 at 6; Dkt. No. 1-1 at 3. Pollard responded the next day and told the plaintiff "C.P.S. Gessner will take care of the situation and speak to C.O. Monka." Dkt. No. 1 at 6; Dkt. No. 1-1 at 3. The same day, the plaintiff reached out to Deputy Warden Geirach about the situation. Dkt. No. 1 at 6. He says he "did not receive anything back." Id. The plaintiff says he also wrote to Warden Noble about Monka's comments and again noted "other inmates started laughing" at the comments. Id. at 6–7; Dkt. No. 1-1 at 2. Noble responded the next day, "C.P.S. Gessner is currently look[ing] into this and will address it." Dkt. No. 1 at 7; Dkt. No. 1-1 at 2.

On November 22, 2021, the plaintiff filed an institutional complaint asserting Monka had "called him a C.O. and a snitch." Dkt. No. 1 at 7; Dkt. No. 1-1 at 1. The institutional complaint examiner contacted Monka about the

complaint, and Monka reported that "he did not call Inmate Love a snitch." Dkt. No. 1-1 at 1. He responded that the plaintiff had been "routinely telling him how to do his job in a rude fashion and was being rude and sarcastic to him during this exact incident." Id. Monka said he called the plaintiff "a CO out of sarcasm in his response to the inmate." Id. He explained that he "realized after the fact it could have been handled a different way and reported it to Sgt. Bowers." Id. The complaint examiner also contacted Bowers, "who reported he believed Officer Monka's statement to the inmate appeared to be sarcastic." Id. Bowers addressed the matter with Monka and notified Beck about the incident. Id. Beck told the complaint examiner that Bowers reported the incident to him "and reported that the sergeant had talked to both the staff member and the inmate and the issue was resolved." Id. The complaint examiner concluded there was "no information that would support any staff misconduct or work rule violations on the part of staff." Id. The complaint examiner concluded that no investigation was warranted and recommended dismissing the complaint. Id. The plaintiff does not say whether he appealed that recommendation, but he says he "exhausted his administrative remedies before filing this Complaint." Dkt. No. 1 at 3.

The plaintiff asserts that Monka's comments placed him at a substantial risk of serious harm because he said them in front of other incarcerated persons. Id. at 8. The plaintiff claims that Monka was deliberately indifferent to that risk of harm. Id. He claims that Noble, Geirach, Pollard, Gessner, Beck and Bowers failed to take reasonable measures to protect him from the risk

Monka's comments caused to his health or safety. Id. at 9. He also claims that the defendants violated institutional policy with how they handled the situation. Id. at 10–11. The plaintiff asserts that the defendants should have moved him to a different prison unit or a different prison altogether. Id. at 10. The plaintiff says that incarcerated persons have "harassed and threatened" him since Monka's comments, and he asserts he and his family have "received numerous threats from prison gang's." Id. at 9–10. He says he "was nearly attacked in the unit bathroom," and he has since "suffered severe psychological and emotional distress." Id. at 10. The plaintiff seeks compensatory and punitive damages totaling $150,000. Id. at 11.

  C. Analysis

  The complaint's allegations could state a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners" (quotations omitted)).

  "Yet, a prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate." Dale v. Poston, 548 F.3d 563, 569 (7th Cir. 2008). The plaintiff's allegations must satisfy objective and subjective components. Farmer, 511 U.S. at 834. To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. It is not enough to demonstrate "a

7

Case 2:22-cv-00780-PP Filed 11/02/22 Page 7 of 14 Document 7

general risk of violence." Brown v. Budz, 398 F.3d 904, 909 (7th Cir. 2005)). The plaintiff instead must show that there was a risk "so great that [it is] almost certain to materialize if nothing is done." Id. To satisfy the subjective component, the plaintiff must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. Id. at 837; Perez, 792 F.3d at 776.

The plaintiff alleges that Monka called him a cooperator and a snitch in front of other inmates. He says those comments created a substantial risk of serious harm from other incarcerated persons who believed what Monka said. Monka denied calling the plaintiff a snitch, and he told an institutional complaint examiner that his comments were made sarcastically because the plaintiff "routinely [told] him how to do his job in a rude fashion." Dkt. No. 1-1 at 1. Except in exceptional circumstances, prison officials' unprofessional comments to incarcerated persons do not violate the Eight Amendment. See Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015). But Monka's comments could have led other incarcerated persons to believe that the plaintiff was a cooperator or a snitch (if he indeed called the plaintiff a snitch). If that happened, the plaintiff understandably might fear retaliation by other incarcerated persons in the form of threats or attacks. The complaint alleges that other incarcerated persons and prison gangs have threatened him and his

8

family since Monka's comments, and the plaintiff says he was "nearly attacked" in a prison bathroom. Dkt. No. 1 at 10. He also says he has suffered anxiety and distress since Monka's comments because of the fear the comments caused him. The complaint does not allege that Monka knew his comments could create a substantial risk of serious harm to the plaintiff. But the court can infer that a correctional officer would know of the risk posed to an incarcerated person from being labeled a cooperator or snitch. See Dale, 548 F.3d at 570 (noting "it's common knowledge that snitches face unique risks in prison"). Construing the allegations in the plaintiff's favor, the court finds the complaint sufficiently states an Eighth Amendment claim against Officer Monka for calling the plaintiff a cooperator or snitch in front of other inmates.

The plaintiff seeks to proceed on claims that all other defendants were deliberately indifferent to the risk of harm Monka's comments created and failed to protect him from that risk. He alleges he wrote or spoke to Noble, Geirach, Pollard, Gessner, Beck and Bowers about Monka's comments. He received a verbal or written response from all but Geirach. The defendants who responded told the plaintiff they or another prison official would speak to Monka and handle the situation. The complaint examiner's recommendation notes that Bowers and Beck confirmed that they spoke with Monka about his comments and considered the issue resolved. The plaintiff claims the defendants should have done more to protect him by moving him to a different unit or prison, investigating the situation further or taking some other action.

The plaintiff does not allege that any other defendant made comments like Monka's or created a substantial risk to his health or safety. He instead asserts these defendants should have done more in response to his complaints about Monka's comments. But the plaintiff has no constitutional right to be moved to a different prison or housing assignment or assigned a higher security classification. See Olim v. Wakinekona, 461 U.S. 238, 245–46 (1983); Montanye v. Haymes, 427 U.S. 236, 243 (1976); Meachum v. Fano, 427 U.S. 215, 225 (1976). Prison officials also do not violate an incarcerated person's rights by declining to investigate allegations in a grievance or complaint or failing to respond to a grievance or complaint. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); Steinke v. Dittmann, No. 17-CV-656-PP, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020). That means the plaintiff has no claim against Geirach. He alleges that all other defendants *did respond* to his complaints and investigated the matter. Noble and Pollard told the plaintiff Gessner would speak to Monka. Bowers and Beck spoke with Monka and resolved the issue. These responses were reasonable given that no one had attacked the plaintiff, and there is no information in the complaint that the plaintiff believed an attack was coming or ever informed any defendant he feared one. His written complaints to the defendants merely told them other incarcerated persons *laughed* at Monka's comments, not that they threatened him. Dkt. No. 1-1 at 2–4. Without reason to believe the plaintiff was at risk of harm because of Monka's comments, they had no reason or obligation to take action to prevent that harm. The plaintiff

does not state a claim against any defendant for their response to his complaints about Monka's comments.

Nor does the plaintiff state a claim because he still received threats from other incarcerated persons despite the defendants' responses and investigation. A prison official is "not liable under the Eighth Amendment if he responds reasonably to a risk, even if the harm was not avoided." See Barrows v. Goldman, 858 F. App'x 199, 201 (7th Cir. 2021) (citing Farmer, 511 U.S. at 843; and Johnson v. Dominguez, 5 F.4th 818, 824–25 (7th Cir. 2021)). The defendants responded reasonably to the plaintiff's complaints. That he still received threats does not mean the defendants' responses violated his rights. His dissatisfaction with their responses or the outcome of the investigation does not amount to an Eighth Amendment violation. See Courtney v. Devore, 595 F. App'x 618, 620 (7th Cir. 2014) (citing Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009)).

The plaintiff also asserts that Noble, Geirach, Pollard, Gessner, Beck and Bowers violated prison policy in how they handled the investigation into Monka's comments. But §1983 protects against only constitutional violations; it provides no protection for "'violations of . . . departmental regulation[s] and . . . practices.'" Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) (quoting Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003)). The plaintiff has not stated a constitutional claim against any defendant except Monka. The court will not allow him to proceed against the defendants on a claim about alleged violations of prison policy. The court will dismiss Noble,

11
Case 2:22-cv-00780-PP   Filed 11/02/22   Page 11 of 14   Document 7

Geirach, Pollard, Gessner, Beck and Bowers because the complaint does not state a claim against them.

The plaintiff also names fifty Jane or John Doe defendants, but he has not alleged that any of those Doe defendants did anything to violate his constitutional rights. Merely listing the Doe defendants in the caption of the complaint without alleging what any of them did or failed to do to violate the plaintiff's rights is not enough to hold them liable under §1983. The plaintiff must establish each defendant's "personal responsibility for any claimed deprivation of a constitutional right." Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000). Because the complaint fails to do that against any Doe defendant, the court will dismiss all the Doe defendants from the lawsuit.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Jon Noble, Michael Geirach, Thomas Pollard, Timothy Gessner, Harold Beck, Nathan Bowers and Jane and John Does 1 through 50.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Dakota Monka. Under the informal service agreement, the court **ORDERS** the defendant to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$242.05** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Kettle Moraine Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

13
Case 2:22-cv-00780-PP   Filed 11/02/22   Page 13 of 14   Document 7

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 2nd day of November, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**