UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KENSHOND K. LOVE, JR.,

          Plaintiff,

v.                                        Case No. 22-cv-780-pp

DAKOTA MONKA,

          Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 18), DENYING PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (DKT. NO. 24) AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 25)**

Kenshond K. Love, Jr. is proceeding on an Eighth Amendment claim against correctional officer Dakota Monka. Dkt. No. 7. This order resolves the plaintiff's pending motions for default judgment, dkt. no. 18, for a temporary restraining order (TRO) and preliminary injunction, dkt. no. 24, and to appoint counsel, dkt. no. 25.

**I.    Motion for Default Judgment (Dkt. No. 18)**

On March 22, 2023, the court received the plaintiff's motion for default judgment "for failure to provide the Plaintiff with" discovery and interrogatory requests. Dkt. No. 18. The plaintiff also filed what he labels a declaration, which lists the discovery he requests from the defendant. Dkt. No. 19. The defendant responds that she did not receive the plaintiff's discovery requests until February 21 and 27, 2023, so her sixty-day period to respond had not yet

elapsed when the plaintiff filed his motion for default judgment. Dkt. No. 21. She asks the court to deny the motion. Id. at 2.

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Defendant Monka has not defaulted. Counsel appeared for Monka on November 18, 2022, less than two weeks after the court issued the screening order. Dkt. Nos. 7, 8. On December 20, 2022, Monka filed an answer to the complaint. Dkt. No. 10. She actively has defended, and is defending, this lawsuit and there is no basis to conclude that she has defaulted.

The court could construe the plaintiff's motion for default judgment as a motion to compel the defendant to produce responses to his discovery requests under Federal Rule of Civil Procedure 37. But as defendant Monka points out, such a motion would be premature. The court issued a scheduling order on January 3, 2023, ordering the parties to complete discovery by June 9, 2023. Dkt. No. 11 at ¶1. The court explained that the parties must "serve discovery requests on the opposing parties, and must not file them with the court," and that the responding party would have sixty days to respond to discovery requests. Id. at ¶1 & n.1. On January 19, 2023, the court received the plaintiff's request for production of documents. Dkt. No. 12. The clerk's office sent the plaintiff a letter in response, reminding him that he "must serve discovery requests on counsel for the defendants by mail or other means of

delivery" and must not file those requests with the court. Dkt. No. 13 (emphasis omitted). Monka avers that she received the plaintiff's requests about a month later, which means her responses were not due until April 2023. Dkt. No. 22. The plaintiff filed his motion on March 22, 2023, only about thirty days after he served his discovery requests on Monka. The plaintiff has not filed a reply in support of his motion and has not asserted that he still has not received responses to his discovery requests. The court will deny the plaintiff's motion for default judgment, whether he meant it as a motion for default judgment (for which there is no basis) or as a motion to compel (which was prematurely filed by the plaintiff and may now be moot if the plaintiff has received the discovery).

**II.    Request for a TRO/Preliminary Injunction (Dkt. No. 24)**

On March 30, 2023, the court received the plaintiff's "Declaration in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction." Dkt. No. 24. The court did not receive a separate motion from the plaintiff; it received only the declaration. The plaintiff reiterates the claim alleged in his complaint that Monka called him "a CO and a snitch." Id. at ¶3. He avers that "[t]he officer" (presumably Monka) "went through [his] legal work on 3-17-23 as [he] was leaving the library." Id. at ¶3. He says that on March 27, 2023, unspecified "officers" pulled him over and searched him during his walk to his cell from the library. Id. at ¶4. He says other unnamed prison officials or officers searched his cell shortly after. Id. at

¶5. He asks the court "to force them to stop the harassment." Id. at 2. The defendant opposes the plaintiff's request. Dkt. No. 26.

To obtain preliminary injunctive relief, whether through a temporary restraining order or a preliminary injunction, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three threshold factors, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. See Wood, 496 F.3d at 622; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

In the context of litigation by incarcerated persons, the scope of the court's authority to issue an injunction (including a TRO) is limited by the Prison Litigation Reform Act (PLRA). See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: [P]rison officials have

broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

The plaintiff's declaration in support of his request for an injunction or TRO does not satisfy these criteria. The plaintiff asks the court for a TRO and preliminary injunction to prohibit unspecified officials and/or officers at his institution from searching him or his cell, which he characterizes as harassment. He has not explained how or whether his underlying case against defendant Monka has any chance of succeeding. He has not explained why he has no appropriate remedy at law (why, for example, suing Monka for money damages as he has done is not a remedy). He has not explained how or why he will suffer irreparable injury unless the court orders the officers to stop searching him and his cell.

Even if the plaintiff had satisfied those criteria, the alleged harm he seeks to enjoin involves matters of institutional security over which this court has little authority. It would not be appropriate for the court to order institution officials to stop searching an incarcerated person or his cell without compelling evidence that the officials are conducting the searches only for the purpose of harming, harassing or intimidating the incarcerated person. The plaintiff's brief declaration does not provide that evidence. The plaintiff also does not identify the person or persons to whom the injunction should apply.

5

His declaration appears to suggest that Monka went through his legal work on March 17, 2023, but otherwise he says only that "officers" searched him. Dkt. No. 24 at ¶4. He does not name the officers or say how many were involved. The court cannot enter a broad injunction prohibiting any officer at the plaintiff's institution from searching him. That request is not "narrowly drawn," as the PLRA requires. The court will deny the plaintiff's request for a preliminary injunction and/or TRO.

### III.    Motion to Appoint Counsel (Dkt. No. 25)

On April 3, 2023, the court received the plaintiff's request that the court appoint him counsel. Dkt. No. 25. The plaintiff asserts that he cannot afford counsel on his own, the issues in his case are complex and he has "a low reading level" and only limited legal knowledge. Id. at 1. He also says that over a month ago, he wrote letters to five attorneys asking them to represent him in this lawsuit, but that none of them responded to his requests. Id.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and

7

Case 2:22-cv-00780-PP   Filed 06/16/23   Page 7 of 11   Document 28

counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff's motion satisfies the first of these elements. He says he wrote to five attorneys requesting their assistance, but none responded. The plaintiff attached what appear to be copies of the letters that he sent to the

attorneys. Dkt No. 25-1. The plaintiff's letters to the attorneys are brief and identical. In each, he provides his name, says that he has a civil case against an officer at Kettle Moraine Correctional Institution and asks if the attorney would be "willing to represent [him] on this civil case." Id. at 1. The plaintiff has satisfied the first Pruitt element—he has tried on his own to find a lawyer.

But the plaintiff has not satisfied the second Pruitt element. The plaintiff says that he cannot afford counsel, the issues in his case are complex and he has limited legal knowledge. None of these alleged difficulties is unique to this plaintiff or this case. The court is aware of the difficulty incarcerated persons face litigating cases on their own. But as the court noted above, the Constitution does not entitle the plaintiff to an attorney to represent him in a civil case, and there are not enough attorneys willing and able to represent *pro se* plaintiffs. That the plaintiff is on his own in a state facility with scarce resources is, unfortunately, a situation the court sees far too often; these issues are not sufficient to justify the court recruiting counsel at this stage.

Nor has the plaintiff demonstrated that he is one of those *pro se* litigants most in need of an attorney to effectively litigate this case. The plaintiff's complaint is well organized, it is easy to follow and it clearly states the plaintiff's allegations that he believes entitle him to relief. The plaintiff claims that defendant Monka called him a snitch, which risked retaliation from other prisoners. Despite the plaintiff's assertion otherwise, that claim is straight-forward and does not contain complex issues that the plaintiff will need to navigate, such as medical evidence or expert witnesses. The complaint also

includes legal analysis, which shows that the plaintiff understands the legal basis for his claim and the elements that he needs to prove. He since has filed several motions, including those discussed in this order, and a motion for summary judgment; these motions further show his ability to research the law and prepare understandable filings. Nothing in the plaintiff's complaint and other filings to date suggest that he is incapable of litigating this lawsuit on his own.

The court will be flexible in giving the plaintiff any reasonable additional time he requests for him to litigate. As the case progresses, the legal and factual issues may become too complex for the plaintiff, his circumstances may change or he may find himself unable to obtain the information he believes he needs to prove his claims. If that occurs, and if additional time does not resolve the issue, it may be appropriate to recruit counsel to represent the plaintiff. But at this stage of the case, the court finds that the plaintiff has not demonstrated that he requires the assistance of counsel to present his case. The court will deny the plaintiff's motion to appoint counsel without prejudice. That means that he may renew his request for assistance later in this case, if necessary.

### IV. Conclusion

The court **DENIES** the plaintiff's motion for default judgment. Dkt. No. 18.

The court **DENIES** the plaintiff's request for a temporary restraining order and preliminary injunction. Dkt. No. 24.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 25.

Dated in Milwaukee, Wisconsin this 16th day of June, 2023.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**